Lackey gave a bond to M'Gee for a horse and money; the horse to be delivered five days after, the money to be paid in nine months. The note was dated the 6th of September, 1804; M'Gee assigned it to Thomas Berry the 26th of March, 1805. Berry assigned to Lynch the 15th of July, 1805. Lynch applied to M'Gee for the money the 17th of July, 1805, who requested the plaintiff to sue Lackey, and promised that he would show property of Lackey sufficient to satisfy the judgment if it should be obtained, or that he would pay the same. The same day Lynch sued Lackey, and obtained judgment in May, 1806, and the defendant did not show the property nor pay, c. Verdict for the plaintiff and judgment. Lackey had nothing to pay with. After judgment against Lackey, several hundred dollars were made out of his property by execution for the satisfaction of debts due to creditors. Lackey, Berry, and M'Gee all lived in Maryville, or the vicinity thereof. The Court refused to instruct the jury that the promise of M'Gee was within the statute of frauds and perjuries; and also refused to instruct them that a special request was needful to be made by the plaintiff to M'Gee to show the property. The Court instructed them that M'Gee's promise, together with his assignment, rendered him liable to the amount of the covenant and the costs of suit. Judgment for the plaintiff, upon which errors were assigned. *Page 106 
The first count is, that M'Gee became liable by Lackey's failure to pay. The second count was for money had and received to the use of the plaintiff, Lynch. The first count can not be supported; there is no privity between Lynch and M'Gee whence it could be implied that such a promise was made. A promise or agreement between Berry and M'Gee is not by any law assignable to Lynch. Upon the first count, then, is M'Gee liable to Lynch by virtue of the assignment to Berry? The assignee of an unnegotiable instrument, as this is, may sue the obligor in the name of the obligee; that is the effect of the assignment. A court of law would hinder the obligee from releasing the debt or receiving the money or horse; it would consider the debt as belonging to the assignee, and would set off a debt due from the assignee to the obligor. The word "assign" implies an agreement or covenant, if the assignment be under seal, that the assignee shall be permitted to receive the money, and that the obligee will not, by any act of his, defeat him. It raises a promise or agreement between the assignor and assignee, unless it appear the assignee gave for it a sum inferior in value to the money and property called for in the bond; that if the money, by using proper diligence, could not be got from the obligor, then the assignor would pay it to the assignee. It is not believed, though so intimated in 3 Cranch, 311, 316, 319, that the assignee can in equity sue him who indorsed to his assignor, there being no agreement between them either express or implied; upon what principle can it be done? 3 T. 757. If indeed he could, then it would be perceived that there was a moral obligation which could be made the foundation of a promise binding in law. What is an assignment by the indorser to the assignor? The very same engagement that is between the assignor and assignee; and is that agreement, or promise implied, passed to the assignee with the original covenant? It is not. In *Page 107 
the case of a negotiable paper, every indorsement is an undertaking to pay to the ultimate indorsee upon certain conditions, which, by the law merchant, are transferred to him. Not so where the law merchant does not apply. It seems to follow that the assignee, Lynch, can not sue M'Gee upon the assignment made by him to Berry. Lynch, however, has sued him upon an express promise to show property or pay, if he, Lynch, would sue Lackey, which he did and obtained judgment, c. If a man, supposing himself bound when he is not, promise to pay, or do any other act, he shall not be bound. 3 T. 757; 5 Bur. 2670; 7 T. 712. Here it is said the induced Lynch to sue Lackey, which, before the defendant's promise, he would not have done. And it is true that a loss sustained by the promise to obtain the benefit of the promise made by the promisor is a sufficient consideration. A promise simply to pay when he is not liable is not obligatory, because, say the books, it is nudum pactum. Is it not equally in effectual, if not simple, but conditional? do this, and then I will pay; especially if he believed that, upon doing that thing, he, the promisor, was liable without any promise. He acts wholly under a mistake. He is misinformed of his rights. His promise is upon an understood condition of his own liability, which makes it of no effect if the condition do not exist or be not performed. But it may be said, here is not simply a promise to pay, upon a supposed liability which does not exist, but the promise is to take effect after something to be done on the part of the promisee; he is to sue Lackey, c. The promise in this respect is equally caused by the mistake of the promisor as the simple promise to pay; the supposed liability of the promisor is the foundation and cause of it. If it be true that the failure of an understood condition will take from the promise its obligatory force, that may equally take place on a supposed state of the law as on a supposed state of *Page 108 
the facts. As was the case where a schoolmaster was applied to and said that land could never ascend, and therefore, on the death of a brother, decided in favor of the younger of two surviving brothers. For this mistake a deed executed by the elder to the younger was set aside. Newland, 432. It may be supposed that M'Gee was under a moral obligation, if not a legal one; that Lynch might sue Berry, and then Berry might sue M'Gee and recover. That recourse would depend on circumstances. At all events, Berry must first have paid. Berry, if any loss were sustained by keeping back the bond which might have been avoided by a timely return of it, would not be allowed to recover against his immediate assignor. If the consideration given by Berry was so trifling as to show the bond was taken without recourse, the jury under the influence of that consideration might find the fact. The moral obligation therefore is not apparent, and can not be taken on a view of this case to have existed.
 Judgment of the Circuit Court reversed. *Page 109